Thank you ladies and gentlemen, and good morning and welcome to the appellate court. I believe we have one case on the call for today. You'll be allowed, I think the rule says 20 minutes for argument, and 20 minutes for each side, and then you'll want to save some time for rebuttal. Please know that we have read the briefs, we've read the cases contained in the briefs, and are very acquainted with the facts of the case as well. So you might as well get to your arguments right away. All right, I'd like all lawyers to identify themselves now for the record, and then when you step up, identify yourself again please. Hold on, we better call the case. Sorry, call the case please. It's USF Holland v. Radono, Cameli & Hoag, case number 1-13-1727. Thank you.  Thank you. All right, very well. And counsel, are you ready to begin? Step up and again state your name for the record so we know who's speaking. Thank you. This is a legal malpractice case that arises out of a motor vehicle accident. There are two central legal issues that the court needs to address here. One is the legal interpretation of the deadline to file what is known as the non-party defense under the Indiana Comparative Fault Act, and the second legal question is whether or not the collateral source rule should apply in a legal malpractice case. Those are the two legal issues, or central legal issues, that this court needs to confront. Counsel, can I ask you a preliminary question? Sure. As far as what's on appeal here in the standard of review, is it a motion in limine and motion for summary judgment, or all motions for summary judgment, and what's the standard for that? Well, the standard is de novo. For all? Well, for all, and the reason is the ruling was on a summary judgment motion, which is clearly de novo, and that summary judgment decision was based on the legal ruling that was made on motion in limine number two. And I think that the defense concedes that that was a legal question, and legal rulings are reviewed de novo. We agree that it's a de novo review as well. All right, so they concede it's all de novo. I believe that that's their concession, and they agree that it's a legal question on the interpretation of the statute. Thank you, sir. Continue. So we demonstrated as a matter of law that the defendants allowed the deadline under the Non-Party Act to pass while the defendants represented USF Holland. Therefore, it was error for the court below to grant summary judgment, and it was error for the court below to find that the statute of limitations had not passed. So summary judgment should be reversed, the motion in limine number two should also be reversed. We also demonstrated as a matter of law that a legal negligence case is a tort case, and like all other tort cases, the collateral source rule should apply to such cases. Therefore, the summary judgment that was granted in favor of the defendants and against my client on that issue should likewise be reversed. Like all legal malpractice cases, there's two layers to this case. There's the legal negligence case, and then the case within the case. Here, the case within the case is a motor vehicle accident that happened in Indiana. The key facts here are not in dispute. USF Holland is a trucking company. Dale Gilchrist was driving the truck on June 19, 2002. He came in contact with another vehicle driven by Anthony Hardin, and Lisa Kepin was a passenger in that vehicle. Lisa Kepin was rendered a quadriplegic. Was it an oncoming left-hand turn? It was an oncoming left-hand turn, uncontrolled intersection. The truck was making left-hand turn. Hardin was coming in the opposite direction. All the evidence suggested that Hardin was traveling at an excessive rate of speed. He hit the very end of the truck. So all that is not in dispute. It is also not in dispute that Perry Hogue and the Redonio firm was engaged to represent USF Holland in the event that a lawsuit followed. They were engaged within weeks of that accident to be proactive and to take steps to avoid excessive liability that a client has faced from time to time arising out of these types of occurrences. Hogue immediately identified the Indiana non-party statute as a key defense. He didn't do anything about it. The suit was eventually filed. He didn't raise that defense at any time during that suit. Instead, he pursued a form of nonconvenience motion that went on for about a year and a half. The deadline to file the non-party suit passed on his watch. New counsel was brought in, recognized that. The court below in the Kepin case struck the affirmative defense and tried to raise that defense. And the case settled for $5.65 million. These are all facts that are not in dispute. What is also not in dispute is out of that $5.65 million, $3.65 was paid by my client's insurance company. Counsel, let me ask you, the fact that there was no answer filed in this case by the Rudonio firm. Is that true? Does that make any difference? It doesn't because Hogue admitted in Rule 187 allows the filing of an answer. And he admitted that an answer could have been filed, but he chose not to. He could have filed an answer and preserved the statute of limitations and chose not to. So it's a distinction without a difference, really? That's what your argument is? It's true, a lot of the cases that you talk about are cases where there was an answer filed in that argument. On the issue of Owens. You're not following my question? I'm not following your question. I just want to ask you relative to the issue of the answer, and that's not an issue for you. No answer being filed. I'm with you now. It's not an issue because looking at the Indiana statute, there's four sentences in that statute that pertain to the deadline to file the non-party defense. And the first is that the defense should be raised as part of the first answer. And so that is really a procedural question of when that defense should be filed. But following that, in the third sentence, it sets a deadline. And that sentence starts out with the word however. And the word however means it supersedes what came before it. And that sets what we consider a hard and fast deadline for the raising of the defense. So the lack of an answer I don't think matters because it matters insofar as an answer could have been filed and the defense could have been preserved under Illinois procedural law. And Hogue admits that. Counsel, let me ask you a follow-up to that. As Section 3451-2-16 states, the defense can be raised in the first answer. Now, wasn't it reasonable for the Radonio firm to see whether its forum nonconvenience motion would be granted before filing an answer? Was that procedurally an unusual thing for it to do or not? Well, the first thing that a lawyer needs to do is protect their client. And they need to protect statutes of limitations. And so in pursuing the forum nonconvenience motion, he went and pursued a course of action that allowed the statute of limitations to pass in the meantime. So that's not reasonable. And what's more reasonable is that there's a protection in Illinois Supreme Court Rule 187 that allows the filing of an answer. It allows the preservation of any defense. Would it make any difference whether the court was applying Illinois law or Indiana law? Well, if Indiana law, I mean, sorry, if Illinois law applied, then yeah, it would make a difference because then this defense is inapplicable. With that in mind, with the forum nonconvenience motion having been filed, do you still say it was unreasonable for the party not to file an answer before seeing whether their forum nonconvenience motion would be granted or not? Every lawyer, when they file that forum nonconvenience motion, they're hoping that it will be granted. Sometimes it is. Sometimes it isn't. Strategically, that was a tactic. And you're saying that that was absolutely unreasonable? I think so. Absolutely. And see, what he believed and what the evidence suggests, and we never got to it because we didn't get to trial, but what the evidence suggests is that Hogue believed the case had to be in Indiana for Indiana law to apply. So his thinking was, I need to move the case across the state border in order for Indiana law to apply. No, he said he wanted to move it over there because he thought the verdicts would be less. That was one of the reasons. I would submit that that was probably the main reason. Well, in his papers, he wanted it over there so Indiana law would apply. And I would suggest that Indiana law would apply whether it's here or there. And therefore, the more reasonable conduct is to preserve the defense first because your forum motion may or may not be granted. And first and foremost, you've got to preserve your defense. And in this case, in particular, because the defense was to allocate liability to another party in a left-hand turn accident where the other party clearly was the more culpable party. So that was it is unreasonable for him to not have raised the defense, and it would not have hurt the case at all. It would have actually helped the case by saying it's more appropriate to move the case to Indiana because Indiana law is going to apply. All right. Counsel, as far as the issue of the 150 slash 45 day rule, day's rule, whatever you want to call it, give me your best argument. Your opponent says that it should be looked at as flexible at time frame. That's what Owens says. Now, what's your best argument that that's not the case? My best argument, Your Honor, is number one, Owens is limited to its facts. You have a statute which clearly states that the action of the defense shall be pled no later than 45 days before the expiration of the statute of limitations. It does say that, but didn't the Indiana Supreme Court go through quite a discussion of how it applied? It did in a specific circumstance where the plaintiff settled with a named defendant after the statute of limitations. The plaintiff settled with a named defendant after the passing of the statute of limitations, and the court, therefore, in that instance allowed the addition of the non-party defense. And the reason that is a manipulation of the allocation of fault. The first rule of business for the Comparative Fault Act is a fair allocation of fault amongst the parties. And what the Indiana courts have recognized is that if a party can come in, name a defendant, settle with them, and foreclose a non-party defense, that would invite manipulation. The Gilliam court said it this way. Such a rule would inevitably lead to manipulation by plaintiffs who could first settle with judgment-proof tortfeasors who are primarily or completely responsible for a tort, and then proceed against a remaining deep pocket, ultimately focusing the jury's attention on that deep pocket as if the other tortfeasors did not exist. Well, doesn't that ruling, though, suggest that it's not a hard and fast rule? Well, it is a hard and fast rule, except for the situation where you have a named defendant who was settled with. That is the only exception, and the Templin case was not overruled. The Templin case was a case where the non-party defense was not timely filed because it was filed beyond the statute of limitations. Well, they didn't specifically overrule it, but is that what you're saying? They didn't specifically point out, and we overruled that. They didn't specifically overrule it. And the other thing about Owens is where you have parties that were not named by the plaintiff in Owens, the Owens court, it didn't specifically reach it, but it commented on those parties and said it appears that the trial court was correct in granting summary judgment with respect to those parties. So you have a distinction between named defendants and non-named defendants. Our case is a non-named defendant. Harden was never named, so he would fit within the class of defendants in Owens who were not named, and the court there said in commentary that the trial court apparently granted summary judgment appropriately. Isn't the underlying purpose of that rule to make sure that the plaintiff isn't surprised? I mean, the plaintiff could hardly, in the underlying case, could hardly argue that she didn't know that the driver of the car in which she was riding was a possible defendant. The burden of proof on the non-party defense is on the defendant. That's what the statute says. In all the cases, including Owens, it says you can't look at plaintiff's knowledge because to do so would unfairly shift the burden of proof to the plaintiff. So while you, I mean, that's an interesting fact that the plaintiff may be aware of other non-parties, it's not germane to the analysis because otherwise you're shifting the burden of proof to the plaintiff. That's what the Templin court said. That's what the Owens court said in the same and similar arguments of what the plaintiff knew. What's important is what the defendant knew. And I guess what's also important here from a policy standpoint is if the rule advocated by the defense is upheld, a defendant like USF Holland could get sued. They could wait out the statute of limitations and not name the non-party or wait out the statute of limitations and then ask for a choice of law ruling, ask for a non-party defense to be made. They would be able to allocate 90% of the fault to a party like Anthony Harden and Lisa Kepin would not be able to recover. Lisa Kepin would be the party that would be most injured by the rule that the defense is advocating. The rule that the defense is advocating is inviting manipulation of the statute that the Owens court sought to prevent. That where you could have defendants that sit on their case, that wait out the statute of limitations in order to deprive the plaintiff of a full recovery. Let me ask you, a lot of the cases you talk about in this area have to do with procedural emotions to amend, not the posture in this case. Does that make any difference? Well, it doesn't so far as the courts in those cases, I know that some of the rulings were made as a matter of law, reversing summary judgments and things like that and that's how clear this deadline is in the courts enforcing those deadlines and saying even on a lesser standard that might apply, the courts recognize that these deadlines are very important and other than the Owens case, other than the Owens case, courts have strictly adhered to these deadlines and as I mentioned, there's a good reason for the rule in Owens, it's to prevent manipulation and again, the rule that's being advocated by the defense invites manipulation. In Owens, the court said that no, and this is a quote, no violence is done to either of those objectives by permitting a defendant to assert a non-party affirmative defense reasonably promptly after receiving notice that the named party defendant has been dismissed from the lawsuit. Now of course, that was dealing with people who had been in the lawsuit and then settled and were out of the lawsuit and the purpose was to avoid having again, the empty chair defense for one thing where there was nobody sitting in the chair and secondly, there would be no opportunity for the defendant to name that party because that party was not a non-party when the suit started. So how do you reconcile that with your theory? Well, pardon was a non-pardon. I think that goes to the issue of your insistence that this is a hard and fast rule and that the trial court has no discretion to allow a non-party to be added at some later time and I'm trying to figure out how does that position square with the language of the court in Owens-Corning. It sounds to me like the court says that there is some flexibility. There is and the flexibility though has to be consistent with the two conditions set out in sentence number four of the statute. Did they say that in Owens-Corning? Did the court say that? Yeah, and the reason the Owens court came around to it is condition number two, which is not met here in our case, giving the claimant a reasonable opportunity to add the non-party as an additional defendant to the action before the expiration of the period of limitation applicable to the claim. The Owens court recognized that condition number two is met because the defendant had in fact been added to the case prior to the statute of limitations. Our case is different. Pardon was not added to the case prior to the statute of limitations. But the court didn't say that in Owens-Corning. That's not what the court said. Well, I believe that was the reasoning. I'm happy to look at it again, but I believe that that was the reasoning and how the court got to its result in Owens. And important about Owens, again, is our case were parties not named in the first place. What the Owens court said is it appears that the summary judgment as to those parties was proper in sending the case back to the trial court. That was the guidance that was given in Owens. Owens does not address the facts in our case. I want to ask you about the $2 million. I'm sorry? I'd like to ask you about another issue. Sure. If you're done with this. I'm at your pleasure. With respect to the remaining, the $2 million portion of the settlement that the trial court identified as a genuine issue of fact as to whether or not the loss was incurred by USF or its corporate parent, you're of course claiming that that was an element of damages that your client suffered. Tell me what's your best argument in support of that theory? Well, number one, it's not an issue that's on appeal because there's been no cross appeal. Secondly, that's a question where the trial court, after weighing summary judgment briefs, properly found that there was a question of fact on it. As a matter of fact, as a matter of corporate finance, if you will, we have witnesses that testified as to how the money flowed. And it was USF Holland's money. Money would come into USF Holland, it would put it in its corporate parent's bank, and then when an expense needed to be paid, it would take that money out and pay it. And that's what was done with that $2 million. And as the counsel said, and the question is, it's like their piggy bank. And it is. Counsel, let's talk about Sterling Radio. Your opponent says that Sterling Radio draws a clear distinction between the types of damages that can be available in a legal malpractice case. And you argue it should be the same for any kind of tort. Now, do you disagree with the analysis of your opponent? I guess where I come down is the cases that say collateral source doesn't apply in a legal malpractice case, with all due respect to all the courts that have ruled on it, I think are drawing distinctions without a difference. They are speaking about personal injury damages versus pecuniary injury damages, and these are all damages. What do we do with all those cases? And if we were to agree with you, how would we write that? Well, just as we wrote it in our group. I think the rationale is, and it's a fair analysis, is Arthur versus Couture, and then the Willis case, expressed a shift in how the collateral source rules should be applied in Illinois. Prior to Arthur, it was along the lines of the Eastman case, which is a legal malpractice case, and dozens of other legal malpractice cases that say the damages are what the loss is to the plaintiff. And so it used to be the policy that plaintiffs shouldn't be overcompensated. Arthur and Willis say, no, it's not a question of whether the plaintiff should be overcompensated. It's now a question of, you don't want a windfall to fall on the wrongdoer. And here, there would be a windfall to the wrongdoer if there's no collateral source. This is a classic collateral source case, because unlike all the other cases out there, Sterling Radio and Noonan and all the others, my client actually bought insurance, which under the restatement, the restatement specifically identifies insurance as a class of a third-party payment that is subject to the rule. Well, the Arthur and Willis cases, they were medical malpractice cases, were they not? I'm not sure. I know that they dealt with medical bills. Medical expenses, I should say. And they pretty much expanded the collateral source rule. Well, it did because, you know, the Peterson case, it dealt with gifts, you know, free medical services. You had, I think, the Willis case dealt with Medicare payments where, you know, ostensibly there's no payment being made in exchange for the benefit. So that was kind of the question being considered there. And it, but it allowed the court to shift its focus, look at the restatement 928 and say, you know, it should be not whether or not the plaintiff is overcompensated. It's whether or not there's a windfall to the defendant. And I'll also say that, you know, you have a line of legal malpractice cases that say what they say about damages and you can't overrecover. There's a whole bunch of tort cases that say there's no double recovery or you can't recover more than your damages. And yet in those cases, in those types of cases, they allow the collateral source rule. So it's really a distinction without a difference. And I don't know, I don't see any rationale for treating a legal malpractice case any differently than any other negligence case. It's fairly radio. Good law or not? Not after Willis and not after Arthur. Anybody else? Counsel, finish up if you would. So as I mentioned, there are two key legal questions that the court is to confront. One is the deadline under the Indiana non-party statute. If you break the statute out into its four sentences, you'll see that sentence number three does have a hard and fast rule. There are conditions that allow the court some discretion to expand those deadlines. But in no case other than Owens is the deadline expanded beyond the plaintiff's statute limitations. And there's good policy reasons for that. Policy reasons for Owens is so that the party cannot manipulate and sue a defendant, settle with them, and then take them out of the mix. And if you accept the defendant's argument in this case, it will invite manipulation. It will invite defendants to sit back, allow statutes to pass. And then the plaintiff, in this case it would have been Lisa Keffin, she would have been undercompensated by at least 90% if the rule is to stand. And it's not in accordance with the policy of Indiana law, which is to fully compensate plaintiffs and to fairly allocate the fault. And as mentioned on the collateral source rule, the cases are drawing distinctions without differences. Today is a good day for the court to step up and apply some good jurisprudence to this question because it is an important question. And if justice is done to the Willis case and the Arthur case and the reading of the restatement, I believe that you'll find that there is no good reason to treat a legal malpractice case any differently from any other court case when it comes to the collateral source rule. Thank you. Thank you, your honors. Again, Karen DeGrand on behalf of the defendants, may it please the court, counsel. I think the place to start again is with the statute, although I'm going to interrupt myself and address Justice Conner's question about the standard of review. Counsel misspoke when he said that the defendants concede a de novo standard of review for all of the issues in this case. That's not correct. As we set forth in our brief, in our preliminary section, although we do agree that the de novo standard of review applies to interpretation of the statute, we disagree that the de novo standard of review would apply to the trial court's exercise of its discretion once the court decided that there was discretion under the statute. So that's actually an aspect of this case that the plaintiff has not addressed in any fashion whatsoever. And that is once the trial court in applying the language of the statute and following the Owens decision recognized that there was flexibility under that decision and recognized that there was discretion to be applied within that would have to be consistent with subparts 1 and 2 of the statute, then that was discretionary. And certainly this court should review that aspect of what happened in the trial court for the trial judges, whether the trial judge abused his discretion, and of course that's a very deferential standard as this court of course is aware. But is that based on the fact that it was a motion to eliminate originally? Partially because of that, Your Honor, but also because the way it comes before the court is slightly convoluted. The motion's eliminate where the parties, where the plaintiff actually asked the court to determine both choice of law and then to interpret once the court made the choice of Indiana law and then to interpret the Indiana statute, then once the court made the determination that the Indiana statute contained flexibility, although the case was beyond the statute of limitations, then the court applies his discretion, the judge applied his discretion to say, okay, let me look at the circumstances here. What were the circumstances here? And Justice Cunningham touched on this issue, and that is the question about the forum nonconvenience decision, and I think the other justices did as well, and the purpose of that, it's not accurate for the plaintiff to characterize my client's conduct as doing nothing to further the potential for the application of Indiana law in the underlying case. The court is correct in recognizing that the issue was, you know, from a strategic position as the attorney, where is my client going to be best protected? Where is my client likely in this, with this very serious injury, to be able to convince a jury to come back if there's liability with a lower damage award, and where am I more likely to convince the trial court to apply Indiana law and to ask the court to, depending on the circumstances, exercise its discretion to do so. So that's clearly, the record clearly bears that out, and there's no, there hasn't been any suggestion that there was delay by my client in terms of pursuing the forum nonconvenience motion and pursuing the appeal. The court, and the wisdom of that choice also, I think is underscored by the fact that this court acknowledged the trial court's comment in denying that motion that it was a close call. It was a close call. And unfortunately, that discretionary call did not go in favor of Holland at that point in time. But it seems to me clear that the trial judge in this case correctly read the statute. That's where Judge Hogan began his analysis, as the parties in the court spent quite a bit of time trying to interpret the statute and presenting their arguments and coming to this determination. Talking about the statute, Indiana Code 3451.216, has the mandatory language shall in it, does it not? It does, Your Honor. So your opponent argues that the Owens case is just to deplice the facts of that case. Do you want to talk about that? I certainly would, Your Honor, thank you. First of all, after the word shall in the sentence that contains the 15045 numbers, the court says the trial court may alter these time limitations. So the idea being that here are the parameters we'd like to see, but it reserves in the trial court the discretion, so long as it's consistent with the two subparts, to alter that timeline. Shall is there, but that's the only way to read this, and I think Judge Hogan made this point. If you read, if you stop, if you say shall and that's it, then what is the purpose of the last three sentences of the statute? And that can't be a correct reading of the statute. As far as the Owens case is concerned, I think it quite clearly demonstrates that there's discretion. There's no language in that case whatsoever saying that the exercise of discretion and the flexibility of the deadline was limited to that specific situation. The court, I believe it's quite clear from that decision, that the court was implementing the, reading the statute as a whole to implement the purpose of the notice provision of the Comparative Fault Act by recognizing that the purpose was to give the plaintiff notice of potential defendants. Clearly we have that situation here. Particularly, and I'm not sure that this, I don't believe this came up in the earlier part of this argument, but remember Kepin, within five weeks of the accident, Kepin had, Kepin's lawyer I should say, had negotiated a settlement with the insurer of the automobile that Hardin was driving. So it's certainly, you know, the discussion and the argument about the potential for manipulation and the unfairness and so on and so forth, that, you know, that's all, those are all well and good to consider in the big picture, but that certainly has no application in this case. What about the component of Owen that says, Owen's Corning, that says that whether or not they were a named defendant, that's an important part of it, and this gentleman Hardin was never a named defendant. This gentleman was not a named defendant, but there's nothing in the Owens decision that says that's the only exception, and there's nothing in that decision that says this is the only time that the court can exercise its discretion. In fact, I'm not necessarily the biggest reader of footnotes, but I read the footnotes to the Owens decision, and in footnote 13 the court specifically recognized the flexibility of the deadline, even in the 150-45 situation. So I don't believe that it's accurate or an accurate rendition of that case to say that it's limited to those specific facts, and I don't think there's anything about the statute that should lead to that conclusion either. If the court doesn't have more questions for me on the statute, I'll move on to the other issues. On the collateral source issue, first of all, I'd like to correct a statement by counsel or I'm sorry, not on the collateral source issue. On the issue of one of the alternate bases that we've suggested to the court for affirming the defense or affirming the judgment, there's no need for the defendants here to file a cross notice of appeal, because the notice of appeal appeals from the judgment, not the reasoning of the court. So we're certainly within our rights to assert alternative bases for this court to affirm the judgment, and those two bases are the question of the payment by a different entity of the $2 million and also the case within the case. But to back up and go to the collateral source rule issue, I think the case law is quite clear, and one aspect of this that I think is important and wasn't commented on is that post Wills, there were several cases in which one in this court that I know of, the Learning Curve case, and the St. Pierre case out of the Second District, in which the vitality of the ruling in Sterling was recognized that the collateral source rule does not apply in legal malpractice cases. So those cases were commented on by counsel, but I think that they certainly established that Sterling is good law. Sterling, which relied on decisions of the Illinois Supreme Court, particularly the Eastman decision, it all remains good law. What about counsel's argument that looking at the big picture, it seems unreasonable that legal malpractice cases are considered any differently than any other tort case? I don't think that's correct, Your Honor, and I'll tell you why. First of all, the beginning of the analysis has to be the definition of the damages in a legal malpractice case, and that was recognized by this court in the Sterling Radio case. And the definition is, and this has been stated by the Illinois Supreme Court and this court on many occasions, it's whether there's a pecuniary injury to an intangible property interest. We're not talking about a personal injury situation, as in Arthur, which involved a premises liability and a personal injury, or in the Wills case, which involved an automobile accident. We're talking about a property interest. It's defined differently. And this court and the Supreme Court has been quite clear that damages in a legal malpractice case require proof, strict proof, of actual damages. Nothing is presumed. The other aspect of this that I think is worth noting is counsel emphasizes Section 920 of the Restatement of Torts. There's a very interesting discussion of Arthur, Wills, and Section 920 in the district court decision that we cited in our brief, the Noonan case. And in that decision, the court noted Comment 10 of Section 920, which talks about the recent determination about the reasonable value recovery for medical bills, and that's what the issue is in Arthur and in Wills. But that has a punitive component, and that's specifically what the restatement said. So to talk about that kind of a punitive component in the context of legal malpractice damages, that's absolutely antithetical to the way that the Supreme Court has defined damages in legal malpractice cases. So I don't believe there's any basis for this court to try to overrule itself or the other decisions that clearly support the trial court's ruling in that regard. I'm sorry, are you still relying on a waiver argument? Your Honor, I think that's an argument that is certainly worth noting. We noted it in our brief, and I think it has validity. It certainly has validity. On the alternative basis for appeal, again, certainly no need for the defendants who were the beneficiaries of the judgment in their favor to raise this in a cross-motion for summary judgment. But it seems clear to me, and I would hope it would seem clear from the record, let's go back to Sterling Radio again. There were no damages sustained. Well, I should say that Holland's damages actually are zero. And Sterling Radio supports the notion that the trial court should have granted the motion for summary judgment in this case on the self-insured retention. It was paid by a separate entity, same situation as in Sterling Radio. By RCW Worldwide, Holland's parent. And interestingly, Holland makes no effort whatsoever in its brief to respond to the substance of that argument. There's not one record cite. There's not one cite to any case law. It simply concludes without citing to the record or anything else that it's a question of fact. Isn't that still pending in the trial court? No, this is just an alternative basis. So in other words, if the court didn't agree with us on the statutory issue, then that would eliminate the remaining question about any damages. The record is very well developed on this point, and it's clear that Holland did not pay that money. Holland never would, will have to pay that money. So again, we're back to Sterling Radio. The other, and I'll refer to this briefly because it's set out in our brief, again, counsel didn't respond to this argument. It's the question of proof of the case within the case. Counsel did acknowledge he has to prove the case within the case. That's not addressed. We obviously presented it in our response brief. The plaintiff does not respond to that argument at all in the reply other than to cite the McCarthy case, which stands for the inapposite proposition that the fact of a settlement doesn't bar a legal malpractice action. Well, we're not saying the fact of the settlement is a legal malpractice action. We're saying that for the plaintiff to be able to prove the case, they'd have to prove what would have happened but for the alleged negligence. So that's your argument about the breach, no breach of duty? I'm talking about the case within the case, so it's causation and damages. So what happened in the trial court, and this was an issue that was discussed extensively before the trial judge, was that Holland moved the court for an order barring any witnesses in addition to the witnesses who had already been disclosed under Supreme Court Rule 213. Holland did not disclose any witnesses other than the attorneys and some insurance personnel, folks who never could come forward and prove the case within the case. None of the parties to the underlying action, no medical personnel, nobody. So that was a basis of discussion, and that's why we raised it as an alternative basis for affirmance in this court. I'd just like to thank the court for hearing us and ask the court to affirm the judgment that was entered in favor of the defendants by the trial court. Thank you. I guess first I'd like to address on the Indiana statute the idea of discretion, and the discretion that counsel says comes out of the Owens case. Even if you agree with that, it's not unfettered. Owens is limited, and if you look at the McLean case, and Justice Connors, you addressed this in standard of some of these cases that came up on motion to amend. The McLean case was a motion to amend after the statute of limitations on the non-party statute, and the ruling there by the Indiana appellate court was that the trial court abused its discretion in allowing an amendment after the statute of limitations. And so that's part of the body of case law that's out there in Indiana, is that first, the standard of review is de novo. You're not weighing the discretion. It is a legal question that is being addressed. Second, Owens doesn't vest the court with unfettered discretion, just because in one particular situation, with one particular party, that the Supreme Court of Indiana carved out from all the other parties in that case, even the non-named defendants, said this is how we're going to treat them, and we're going to allow the filing because it's consistent with the two conditions in Section 16. Just because the court did that doesn't mean a trial court has unfettered discretion now to allow a filing beyond the statute of limitations. And I would suggest that it doesn't, and the McLean case says it doesn't, and the Templin case says it doesn't. Addressing the form nonconvenience issue, counsel said, well, Mr. Hope wasn't doing anything, it was a close call. Well, close doesn't get you anywhere, because what he didn't do is the first order of business, which is to protect his client, and protect his client by preserving the most important defense that existed, which was to allocate fault to a non-party. He recognized it on the second week that he handled the case. Yet in the years that followed after his handling of the case, he did nothing to protect his client in that regard. Well, first it's answering a question that's not being asked. It's not what that judge would have done. It's what's proper under the law, and it's what the statute, what the legal question is. But isn't that Judge Hogan's reading of the statute, that the statute allows flexibility? So had there been some attempt to add that party at that point in time that he would have allowed it? Isn't that what that meant? I mean, you may disagree with him, but isn't that what he was saying? Well, one could conclude that. I think the more important question is, what is the legal question? Where is the deadline under the statute? And that is clearly a legal question, and judges answer that question. And he obviously answered it in a manner that was not satisfactory to you, because he felt that there was some flexibility, and you believe that it's hard and fast. Well, yes, because I think it's an incorrect answer. Certainly. Absolutely. His ruling extended the deadline by over two years beyond, it was almost more than four years after the accident. And that's unheard of in anything. Well, the difference that could be drawn from the judge's comments in the record is that he wasn't looking at the specific numbers. He was looking at the specific facts of this case and whether that was reasonable under the specific facts of this case. Yes, and I would say it's unreasonable because Condition 2 of Section 16 is not met, and that is that the plaintiff is not given the opportunity to bring a case against Hardin within her statute of limitations. When it's more than two years beyond that date that Hardin is being allowed to be added as a non-party, Lisa Kepin can't add him at that point in time, and that does not do justice to the statute. That leaves Lisa Kepin out. That's not within the facts of this case, because she had already settled with that party. Well, that's one of the things I wanted to correct, because that is not the record in this case. She did not settle with Hardin. At least that's not in the record in this case. There is a letter that suggests that. That may happen, but there's certainly no release and no payment and no check. There's nothing along those lines. But I think the most important thing is the underlying premise that the plaintiff has to have some idea of what the contours of the defendant's case is going to be and who the possible other parties who may owe her money may be, and Lisa Kepin could hardly argue that she didn't know that Hardin was a potential defendant. I think all of those things were things within what Judge Hogan was talking about when he was looking at the reasonableness. That's what I'm reading from what he's saying. In the Templin case, the Indiana Supreme Court clearly said that the trial court should not have considered plaintiff's knowledge, because, again, that shifts the burden of raising the non-party defense to the plaintiff, where it doesn't belong. Well, let's look at this case as a great example. Put yourself in the shoes of Lisa Kepin. She's a quadriplegic. She sues U.S. Topoland, who in this accident is the deep pocket defendant. It's the corporate defendant. You have this teenager who's driving his uncle's car with limited insurance. Sues the corporate defendant. At that point in time, she has the corporate defendant 100% within her range. That's what she's thinking. Now, that defendant could raise the defense and say, you know what, somebody else is at fault. But if that defendant doesn't do that, then it has that defendant 100%. Now, if the defendant does say somebody else is at fault, Lisa Kepin should be given the opportunity to say, I want to sue them, too. And that's exactly how this statute is designed. It's designed so that someone like Lisa Kepin, an injured party, can bring a suit against one defendant under joint and several principles and so forth. 100% liability will attach to that defendant. But if that defendant says somebody else is at fault, then she has the opportunity to also bring a case against that somebody else. Because under that scheme, then, she's guaranteed 100% recovery. Let me ask you another question. I got your argument. Because I think that's a very important fact here. Under their theory about saying, well, okay, we've got to wait for the choice of law ruling before we have actual knowledge, that puts the power within the defendant of when the clock starts ticking on the statute of limitations. And under their theory of discretion, we can file two years after the statute, that deprives the plaintiff of a full recovery. And that doesn't do justice to this statute. So after your client fired the Rodonio firm, at that point, and after the denial of their forum nonconvenience motion, what would have happened if they hadn't been fired and they had filed a, they had tried to add the non-party at that time? Are you saying that under no circumstances the trial court would have allowed them to do that? That's your argument, right? But Judge Hogan said he would have. So, I mean, where do we stand on that? Well, Judge Hogan wasn't the trial court. And actually, the judge in the trial court struck the affirmative defense that was filed there. But it was a general affirmative defense. It wasn't a specific naming this non-party. It was an affirmative defense that specifically named Anthony Harden and complied with the Indiana Comparative Fault Act in identifying a specific person or entity as the one responsible for the fault. So it did comply with the statute. And the plaintiff, Kepin, and her counsel, they recognized it as such and called it out as such and said it's untimely. They didn't file a motion to reconsider that, though, did they? No. And again, that's after the horse had already left the barn. It was the damage had been done, and that's why the waiver arguments and all these arguments about what could have and would have and should have been done don't matter because as a matter of law, as a matter of law, the statute passed on June 19, 2004, when Perry Hogue was still representing this client. So I appreciate your time, Justices. I appreciate your consideration. And again, we ask for reversal on the orders. We believe that that's the correct ruling, is that the statute, to read it the way that the plaintiff would read it doesn't allow a full and fair compensation and a full and fair allocation of fault. It's against the statute. It's against the policy under Indiana law, and it should be reversed. And actually, summary judgment should have been granted for my client on that issue. Thank you very much for your arguments here this morning.